Good morning, everyone. We welcome you to today's sitting of the Eleventh Circuit here in Atlanta. Two things before we begin. First, Judge Bradsher and I want to welcome and say a big thank you to our colleague, Judge Hull. It's an honor for both of us to get to sit with Judge Hull. Our senior judges really work for free. They get paid the same if they work a very little bit and if they work a lot. And we're very blessed that Judge Hull has chosen to work a lot and has agreed to sit with us this week. It's a real honor. The second thing is just a reminder about our traffic light system. One of our wise colleagues used to say that the red light is not precatory. It is not optional. So if you see the red light, please conclude. If you're in the middle of answering a question, finish answering the question, but please conclude. With that, we will get started. Our first case is Roy v. Ivy. Counsel? My name is Jason Darley. I am appearing on behalf of Larry Roy. Mr. Roy is a prison inmate in the United States. He was granted a lawyer after motion for summary judgment was denied. I was appointed and we were then requested to brief some issues before the court. The first issue I would address is, in Mr. Roy's complaint, he relies on a series of affidavits in his objection to the granting of the motion for summary judgment. He relies on a series of affidavits. The question is, do they comply with 28 U.S.C. 1746? Facially, it would be hard to stand here and say that they did. Let me back you up even before we get there. Let's assume for the moment they don't comply and we find they don't comply and we cannot consider them. Just assume that for the moment. It seems to me in your letter brief, and I want to pin you down on this, do you agree that there would not be sufficient evidence if we do not consider, we'll call them the six of the affidavits, so all of those other than your clients and all of those other than Mr. I think it's Tijanka. I'm sure I'm butchering that name. Me too. Okay. So you agree if we exclude those six other than those two, the evidence would not be sufficient for summary judgment purposes? Your Honor, yes sir. Your Honor, it would be very difficult for Mr. Roy to overcome what he would need to for the district court to have found a genuine issue of material facts. In other words, he needs other inmates or other folks to be able to say, I had the same issue that he did and that establishes a custom or pattern, which is really the only basis for him to have any liability against Wexford, correct? Yes, sir. Your Honor, because without that, it may just be that isolated series of events solely confined to Mr. Roy's experience himself. And that would not be enough if it were just his own experiences? No, sir. Okay. All right. So then the question is the ones we asked you, which is, are those six, I'm going to use affidavits and air quotes, do they, because we know that they don't comply with what an affidavit traditionally is. And so the only exception, as I understand it under the summary judgment rule, is if they comply with section 1746, correct? Yes, sir. Your Honor. Okay. What basis do we have where an affidavit is not subscribed or sworn to under penalty of perjury? Because it is in writing, most of them, although not all of them are dated, and they, you know, they purport to give some sort of narrative. But where it's not subscribed under penalty of perjury or under oath, or this is true and correct, what basis do we have under the statute to find that these are untorn statements that can be considered under section 1746? If they're not notarized, if they're not witnessed and notarized, I think you don't have a basis to consider them without taking his pleading as a whole, which was your second question. Okay. All right. So you agree at least on their face they do not comply with the rule, and there's no wiggle room in the rule that without anything that happened afterwards or another, looking at another document, that they on their face are not sufficient? Your Honor, no, sir. Okay. So then the question is the second question, which is we have this opposition to summary judgment. In it, it says pages such and such and such and such are affidavits, you know, true and correct or sworn to and subscribed, some statement that these are sworn affidavits, and at the end of that pleading, he signs his own name and dates it. Yes, sir. And the argument you're making, I think, to us is that that opposition read in conjunction with the attached, quote, unquote, affidavits, does comply with 1746. Yes, sir. Give me your best position, best case, best argument for why that's the case. So in the table of contents, he cites pages 4 through 19, which are the affidavits. He swears to his own. Mr. DeGiannaco is sworn and executed properly. He has since passed, as I noted in a footnote. But the other ones, what I would say, Your Honor, I would say I would offer that these witnesses knew their documents were going to be submitted in a way that in his architecture of the entire document, in his writing of the entire document, he kind of cloaks these affidavits with that language. So let me ask you this. If, let's assume that one of the folks, one of the six folks we're talking about, completely lied. I mean, just flat out, utterly lied to help a friend. And that's determined later on whether they come and swear, I lied, I lied, I'm sorry. I mean, just flat out lied, I did it intentionally to help my friend, and I now confess I lied. Could they be prosecuted for perjury for that lie, based on what we have here? As a defense lawyer, I think I would have a strong case to defend them, so. I think you probably would, too. And part of that, I think, is because, and correct me if I'm wrong, because the client itself is not the one who's described under, that it's truly correct, right? Yes, sir. Right. So is that critical fact under Section 1746? In other words, is 1740, is it critical for something to be a Section 1746 affidavit or unsworn statement that can be considered that is done with some degree of penalty of perjury attached, so that we can assure ourselves that it's reliable for purposes of summary judgment? Your Honor, I would have to concede that there would need to be some language in there. It's just, what I would offer, though, is Mr. Moore has drafted this document. One of the issues that I think is pertinent here is the liberal, being able to liberally construe a document. The Haines, the court in Haines basically said, you know, what is ultimately part of this procedural due process is that a person, a pro se litigant, gets a meaningful opportunity to be heard at a meaningful time and in a meaningful manner. And that is certainly the case. And in other words, you know, there are lots of times where a pleading is marked as one thing and we consider it as something else because we're not going to, you know, throw a pro se litigant out of court because they put answer instead of 55 as opposed to a 1983 claim. I mean, we recharacterize things all the time. And so that clearly falls. My question with 1746 is this. 1746 says, here are the things that need to happen and then it's, and then it's, one of those things is the actual statement, this was done under true and correct, to the best of my knowledge and belief, under penalty of perjury, that can be under substantial compliance. And my question is, where a statute gives a specific direction that part of it can be done under substantial compliance but not anything else, is it not our assumption that the rest of those things have to be in the document in order for us to be able to, in order for it to comply with the requirements of that statute? Yes, Your Honor, I think that would be a fair interpretation. But again, I think what we have here is, as far as a meaningful opportunity to be heard at a time and manner, what happened was Mr. Roy, through his prior, there's a series of three complaints. Some of his documents had been notarized. What I would draw the court's attention to is part of this time, manner, place type thing is that the affidavits, with the exception of Mr. Roy's that was dated October 13 or 30 of 2019, they were all dated between March 31 of 2020 and April 14 of 2020. Holman had shut down. I mean, I do death penalty litigation. I couldn't get in there to see clients. Holman had shut down. They had lost staff. Staff had been laid off. A lot of these documents that were intended to be notarized, the notaries were no longer in the prison system. And certainly, that's all understandable. And I think if a document came in, I mean, during the COVID lockdowns, when things came in late, I know we as a court allowed lots of things late or lots of extensions because of COVID. I think, you know, there was a general understanding in the court system about how slow things were operating. But if someone is able to write out an entire narrative, is it not unreasonable for them to also write out, this is true and correct? I subscribe that this is true and correct under penalty of perjury. I mean, that's not a lot to ask, is it? It is not. But again, I would call the court's attention back to the strictures and the restraints that are placed on a pro se litigant, especially one in prison. Uneducated, he's been incarcerated for more than 30 years. He is relying on outdated materials a lot of times, severe restraints on what he could do just from a standpoint. I think if the affidavits are considered as a whole, the document as a whole, I think you would have a genuine issue of material fact because obviously it's not this court's to weigh the merits of it, but it would allow some evidence that an individual along with other prisoners had been subject to lengthy delays. Some of them had lost limbs because of amputation, et cetera. Judge Hull, Judge Brashaw. Thank you very much. Counsel. May it please the court. Counselor, my name is Phil Piggott and I'm here for Wexford Governor 1746 states, in quotes, I declare or certify, verify or state under penalty of perjury under the laws of the United States that the foregoing is true and correct. There is a difference between an affidavit, which has to be notarized, and a declaration that does not have to be notarized. What if the declaration, what if the declaration didn't use this exact language, but said I declare under penalty of perjury that the foregoing is right, instead of saying true and correct. Would that satisfy the rule? I think that would be up to the court to decide would the rule be true or not true. I know. But I think that would get the court halfway there as to having none of the language in there at all. How is the answer to that not yes or pretty close to yes? I mean, so as I indicated to and asked questions of your opposing counsel, the way the statute is written is these things have to happen and then it has to, in other words, it has to be in writing of such person, meaning the person, subscribed by him as true under penalty of perjury and dated in substantially the following form. So the only substantially in there, meaning not quite exactly, is that part of it. And it would seem to me that anything that comes reasonably close to this is what it is and this is my testimony and take it as it is would seem to comply. I mean, do you disagree with that? No, and I think that would be on a subjective interpretation on reasonable compliance. I think that would have to be looked at on a case-to-case basis on the declaration on what the language was in there. So I mean, I guess my question, and this may not be entirely relevant for this case, but for the next case, is the problem here that it's missing the language or is the problem here that the person who filled out the affidavit and wrote the affidavit didn't subscribe to any language at all remotely comparable to what is required? So is it, it's not that, I mean, is the problem that there was no language, special language in the affidavit or is the problem that we don't have the declarant saying anything about this at all? I think it's both. I think that we don't, in majority or seven out of the eight declarations, we don't have the declarants swearing that the information is true and correct and therefore one does not know. I think though, let's talk about Mr. Roy's. I think you're right as to six of them. But let's talk about Mr. Roy's because Mr. Roy is personally, it seems to me, when read together subscribing and I don't know anywhere and I don't see anywhere, and in fact there are some cases from some other circuits which suggest that you can sort of retroactively fix the lack of having some sort of having subscribed to this document. In other words, you can use multiple documents to sort of cobble together enough to be able to comply. Do you think, so that's my long way of asking, do you think that the statement in the appendix to the opposition to the summary judgment motion combined with what just Mr. Roy wrote would be insufficient to comply with 1746? And if not, why not? Just with Mr. Roy's declaration? Talk about Mr. Roy's declaration. You know, I haven't thought of that, but that is not a part of his declaration and I think he generally says in the appendix to his opposition to the special report that all of the above, you know, are sworn penalty of perjury and perhaps. That would include him plus his signature at the end of the document, which includes a Rule 11 certification. And I think perhaps, Your Honor, read liberally that could probably be construed as bringing, you know, Mr. Roy's declaration, which I guess brings us to question number three, even if that's true and you allow the declaration of Mr. Roy standing by itself. So, right, so we have Mr. Roy and under that theory, and I think I tend to agree with what you've answered the question as, under that theory, if we have Mr. Roy and Mr. Dzonka, and I apologize for mispronouncing his name, those are the two affidavits you're left with. Is that sufficient for summary judgment under the claim that Mr. Roy has made against Wexford? No, because they still have to prove that there is a policy in place by Wexford that led to the alleged constitutional deprivation. So I think your argument on that is, and I think you're likely right, but your argument seems to be that you can't show a pattern of practice when you're only talking about one incident regarding one individual, correct? Correct. And you heavily rely on Craig, rightfully so. Fair. What if, let me ask you this hypothetical. What if you had an inmate who is, let's say, a 30-year resident of Holman Correctional Facility, and in year five, that this particular 30-year inmate has a significant foot injury that is constantly ignored and takes five years to have any sort of correction. And then from year 10 to 15, his other foot, his left foot, has a particular problem, different from the right foot, and it takes five years after time and time again going back and getting something done. And then from year 20 to 25, he has a significant problem with his arm that takes five years to get any correction, to get a doctor to see, time and time again is ignored. At that point, has he established a pattern of practice, even though it's a single inmate? I think the Craig case addressed that, because I think Mr. Craig had various issues unto himself with various people, and they said that you still have to show other individuals to show the policy in place. Well, I mean, Craig only dealt with nine days, as I recall. I mean, that's very different than a 30-year hypothetical. And I think, as I read Craig, the ultimate issue was the same. He was seen by nine separate professionals over the course of those nine days. May have been more than that. And those professionals did different things. But the ultimate issue was the same. It was some sort of brain issue that ultimately led to a stroke or something significant. My hypothetical goes to three separate bodily injuries over the course of a very long time, with the same issue of not getting there. Is the fact that it's a single inmate that dispositive under Craig? I think that would have to be reviewed. I would say no, because the case law, I don't know a case that has addressed that issue, standing statute of limitations alone. You know, if somebody 30 years ago had alleged... Well, they certainly couldn't sue under the first and second incident. They're only suing on the third one. But in showing a pattern of practice, they allege what happened in incident one and incident two. I'm not aware where they have taken... Court has taken a case where there is an individual claiming a patent and practice or policy by him, just by himself over a course of years. But I would say from the interpretation of the cases that I've read, that they would know they would still have to show that there was another individual who had a similar hernia like this, like Mr. Roy, that the hernia had not been treated, or they were only treating hernias once they became incarcerated. And that's kind of generally the way these cases go, such as Mr. Roy. In the cases that I deal with on a daily basis, where they complain that a hernia is treated with a belt or conservatively and not surgically, and they wait for it to become damaged or incarcerated before they deal with that hernia. And then they ask for discovery for other inmates whose hernias are not treated, as opposed to just one individual such as Mr. Roy. Can I ask you to address one of the affidavits? So Carl Salter's affidavit ends with this. It says, done in good faith, and then signed, I think. Is that good enough? I would say no. I don't think that done in good faith is still swearing that it's true and correct under penalty of perjury. I have used that fine line of the court interpreting each individual declaration with the language before, but I don't think that done in good faith at the district court level would be accepted. How do we draw that line, right? So we're dealing with prisoners who are handwriting these things. As Judge Lutt pointed out, the statute says you don't have to use this exact language. What do we have to look at to determine whether the language that is used is good enough? Well, in this case, the one, and I'm probably going to pronounce his name probably even worse. He states that the affiant John DeJonca testifies and asserts under penalty of perjury that the stated facts and statements are true and correct to the best of his recollection. So one of these inmates knew somehow, you know, that they were supposed to put that magic language in the declaration. Is it penalty of perjury? Is that, I mean, is that the key aspect of it that it has to mention I am susceptible to prosecution for perjury if I'm lying? Is that the one line that cannot be crossed? No, I think there is other language that could be, if you say, I, there would be a hundred different ways to put the language in the declaration. There's no doubt that the language could be there, but I think what Judge Brash was asking is a question I have too, and it's something I implied with your opposing counsel, which is, isn't the point of this to have impress upon someone that there is a penalty for telling not truth? In other words, the concept of a notarized document is that it's done sworn in front of And what we've done here is to say, we can't expect everyone to go run out and get a notary here. So you can do it on your own. You can sort of self-help, especially in the prison context. But there's still this requirement that you put yourself in the box of perjury, it would seem to me. And then once you take that out, it becomes a lot less reliable. I mean, if somebody does not know that there's a penalty at the end of the day for saying anything, let me put it this way. People will say anything, but it is amazing what happens when you, you know, put someone's, raise their hand and put their other hand on the Bible and swear to tell the truth, right? You know, if you do any trial lawyering, I'm sure you've seen it. And so I, how, isn't that, that's a long way of saying, isn't that the line that we're talking about here is, is whatever the language is putting you in the box of being held responsible or liable for that, if it's untrue in some way? I think that's exactly right. And I think in state court, where they use affidavits as opposed to declarations, they have to be notarized. And the notary will say, you know, is this you, is this information that you have in here true and correct? And the, and the notary is putting their seal on there that that information is true and correct. And they've sworn that that's true. Yeah, it says sworn to and subscribe before me this day and then has all their notary information. The declaration without the notary, if you don't have the notary or the, the sworn under perjury or whatever some magical language is, then you don't know if it's true or not, if they're swearing that it's true or what their mission is. It was stated earlier on that these individuals knew that these declarations were going to be used in litigation, but we don't know that. We don't know what they were told when these declarations were obtained or what the information was going to be used. We don't know what Mr. Roy told these, these, these fellow inmates that he was going to use them for. So we don't, we don't know they were going to be used for litigation. We don't know if there were sworn to at all or whether these people had any knowledge of this. And so I agree with your honor that, that they certainly, without some form of the truth, that you cannot use them. I still think that even if you did take them and hold and you did allow them, there's still going to be sufficient information to allow a claim against Wexford. Yeah, I mean, on that point, I mean, I looked at the affidavits. Most of them just talk about this plaintiff. I mean, most of them don't talk about other incidents. Do you think, let me, let me ask you this. Does it matter from your perspective if we reach that issue? Do, does it matter from your perspective whether we refuse to consider the affidavits or whether we consider them and, and nonetheless rule in your favor? I don't think that is necessary for the court to address the declaration issue because there's still not enough information under Craig, under all the declarations to state that there is a policy in Wexford in place. What about Jennings and Pringle, their affidavits? Now, they clearly don't have the language on there, but both of them talk about their own, their own mishaps regarding health. Now, it's varying degrees of specificity. I don't think it's hernia related and I'm not sure I agree with you that it has to be that specific to the, to the same type of treatment that's ignored where the claim is there's a general policy and practice of not providing health care. But, those two seem to suggest that they were denied health care in at least a similar matter. Would that not be sufficient? Can I respond to part of that? Please. In one of those cases, the individual complained about not having knee surgery after he had recently had hip surgery. And I think that's just a, just a, an issue with the timing of the surgery that you can't have knee surgery right at the time of the hip surgery. And I don't know enough about his medical treatment, but I certainly don't think would be similar to Mr. Roy's hernia issue. The other declaration pertained to the removal of an infected area just a short time after he had surgery. And it was just a, just a, I think just a couple of weeks between the sick call request and being seen by the doctor. And I think that those are just certainly not similar in any fashion. I think that you need to be at least on the same page as, as a similar incident to Mr. Roy. Any more questions? Any more questions? Thank you very much, Counsel. Thank you very much. Counsel, if you can address for me that last question. So let's assume we, we rule in your favor on questions one and two, one or two that we asked. And we're going to question three of those that we asked you. Is the, the Jennings and Pringle one, I think are the only ones that are in the ballpark here. Are those sufficient? And if so, explain to me in detail why they are sufficient under the standard laid out by Craig and other cases of this court. Your Honor, because under Craig, I think you, at this point, if you do consider Pringle and Jennings, you would have Mr. Roy and his allegations, which I do want to go back to. And then you would have issues with Jennings and Pringle with the bleeding issues, the toe issue, the, them claiming that they've had to have limbs amputated as part of Wexford's policy and delay. Mr. Roy, Appellant Roy, in his objection, he lays out a fairly detailed timeline going back to May 6th of 2018, all the way up to, Your Honor, May 6th of 19, May 14th of 19, where he's, where he's interacting with nurses. And, and the nurses, at least according to Mr. Roy, are saying the company's not ordering the proper bandages. We've requested them. He say, they say they will only order, it's company policy that they will only order equipment and bandages, et cetera, on one Monday a month, once a month. And I would say that's a policy. Your Honor, again, as I stated earlier, it's, it's not this court, as we well know, it's not the court's role at this point to argue or to weigh the factors and determine it's, it's, is there a dispute here that if the light, if in the light taken most favorably to Mr. Roy, and that would be, I would submit his affidavits, that would show a policy and practice of Wexford to at least delay this, which we would infer as a cost-saving measure. But I would think that if we liberally construe the document that Mr. Roy has filed, all of the documents that he's filed, I would say he's asserted enough evidence to overcome a motion for summary judgment. Thank you, counsel. Mr. Darley, I, I noticed here in, in reviewing everything that you were appointed by this court under Addendum 5, the court wants to send a sincere thank you for accepting the appointment here and for ably representing Mr. Roy. Yes, Your Honor. Thank you. Thank you for the opportunity. We'll call the next.